OPINION
Plaintiffs-appellants, the state of Ohio and Sandra Hoskins, appeal from the decision of the Butler County Court of Common Pleas, Domestic Relations Division, finding that defendant-appellee, Joseph Lipps, was under no duty to pay child support to Sandra, his ex-wife, until the offset of her child support arrearage had been met, regardless of Sandra's receipt of state assistance. We affirm the trial court's decision.
Sandra and Joseph were divorced on February 23, 1987. Although Sandra was named custodial parent of the couple's two children, no child support was ordered in the divorce decree. However, on February 8, 1988, the trial court issued a child support order. Under the terms of this order, Sandra and Joseph split custody of the children and Joseph was to pay $17.50 a week in child support effective February 26, 1988. Apparently, Joseph did not pay the child support ordered. On February 13, 1990, an administrative order found Joseph owed $1,550.08 in child support arrearage to the state of Ohio.
On March 22, 1989, Joseph obtained custody of the children and Sandra was ordered to pay $30 per week in child support effective April 7, 1989. Joseph retained custody of the children from March 22, 1989 until October 15, 1993 when Sandra regained custody of the children due to Joseph's incarceration. By court order, neither party owed the other any child support from October 15, 1993 through February 7, 1995. The record shows that in December 1994 Sandra began receiving aid to dependent children ("ADC") benefits from the state.
On February 7, 1995, the magistrate entered the child support order that is at the center of this dispute. In that order, the magistrate determined that Sandra owed Joseph a child support arrearage in the amount of $6,930 as of November 1993. The magistrate then ordered Joseph to pay $95.76 per week in child support. That amount, however, was to be offset against the arrearage owed him by Sandra, and Joseph was not obligated to pay child support until Sandra's arrearage had been satisfied.
As a result of that order, Joseph did not make child support payments beginning in February 1995. Sandra continued to receive ADC benefits from the state until she died on November 24, 1996.
In 1998, the state filed a contempt charge against Joseph for failing to pay child support. After hearing evidence, the magistrate determined that the only arrearage Joseph owed was the $1,550.08 found due in the December 31, 1989 administrative order, and ordered Joseph to pay that arrearage at the rate of $25 per week. The magistrate also found that Joseph had a right to rely on the magistrate's February 7, 1995 setoff order by not paying child support until Sandra's arrearage had been met. In addition, the magistrate found laches applied against the state's attempt to collect any other arrearage.
By judgment entry filed April 14, 1999, the trial court reversed the magistrate's laches determination, but affirmed the decision on other grounds. The court found that Joseph was under no duty to pay Sandra until the offset had been met. Accordingly, since Sandra had no right to receive Joseph's $95.76 weekly child support payments until her arrearage had been satisfied by the offset, the trial court found Sandra could not assign an immediate right to child support to the state. This appeal ensued, in which the state raises the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, THE STATE OF OHIO, IN ORDERING THAT THE STATE'S RIGHT TO THE ASSIGNMENT OF SANDRA HOSKINS [sic] CHILD SUPPORT DID NOT BEGIN UNTIL ALL CHILD SUPPORT OWED BY SANDRA HOSKINS TO APPELLEE, JOSPEH LIPPS, HAD BEEN OFFSET.
In this appeal, the state claims that when the trial court entered its February 7, 1995 order, it was precluded as a matter of law from offsetting the $6,930 child support arrearage Sandra owed Joseph because Sandra was receiving state assistance. Since Sandra received state assistance, the state contends that it obtained all of Sandra's rights to child support by operation of law as provided in the assignment provision of R.C. 5107.07.[1] The state argues that allowing the trial court's February 7, 1995 offset would essentially result in the state paying Sandra's child support arrearage.
In contrast, Joseph argues that the trial court retained its equitable authority to order the offset, so that Joseph did not have to pay the $95.76 per week ordered in the February 7, 1995 order until Sandra's arrearage had been satisfied. The offset, which defined Sandra's rights, only gave her the right to receive future support payments after her arrearage had been met by the offset. Accordingly, Joseph argues that Sandra had no "right" to immediately receive child support payments from Joseph until her arrearage had been met, and that the state cannot obtain any greater right to the payments through the R.C. 5107.07 assignment.
In reviewing matters concerning child support, our standard of review is whether the trial court abused its discretion. Abbe v.Bochert (Mar. 29, 2000), 2000 WL 327233 at *2, Summit App. No. 19637, unreported. A trial court has the authority to set off one party's child support payments against arrearages owed by another party under the well-established principles of equity. Krause v.Krause (1987), 35 Ohio App.3d 18, 19-20; Jeffries v. Stanzak (Oct. 18, 1999), Butler App. No. CA98-12-241, unreported, at 3. The concept of offset of arrearages is appropriate and should not be summarily dismissed. Id.
Here, the state contends that the abuse of discretion standard generally applied in our review of child support matters should not apply to the trial court's February 7, 1995 offset order because R.C. 5107.07 divested the court of its discretion to order the setoff as a matter of law. We find nothing in the statute's assignment of a parent's right to child support to the state that requires this result.
Initially, there is an issue regarding the applicable version of R.C. 5107.07. The state alternately cites the version of R.C.5107.07 in effect before 1997 and the recodified version of the statute, R.C. 5107.20, effective prospectively from October 1, 1997. Since Sandra went on state assistance in December 1994, any statutory assignment of her rights to child support would have occurred by operation of law at that time. Accordingly, the version of R.C. 5107.07 that was in effect in December 1994 applies to this case. That provision states in pertinent part:
 (A) The acceptance of aid under this chapter constitutes an assignment to the department of human services of any rights an individual receiving aid has to support from any other person, excluding medical support assigned pursuant to section 5101.59
of the Revised Code. The rights to support assigned to the department pursuant to this section constitute an obligation of the person who is responsible for providing the support to the state for the amount of aid payments to the recipient or recipients whose needs are included in determining the amount of aid received. Support payments assigned to the state pursuant to this section shall be collected by the county administration, and reimbursements for aid payments shall be credited to the county, state, and federal governments in the same proportions as they participate in the financing of such payments.
Under R.C. 5107.07(A), recipients of ADC assign to a department of human services ("DHS") the right to child support to which they may be entitled as a condition for receiving benefits. State ex rel. Donovan v. Zajac (1998),125 Ohio App.3d 245, 252, discretionary appeal not allowed, (1998), 81 Ohio St.3d 1521; McKinney v. McKinney
(Sept. 8, 1997), Warren App. No. CA97-01-003, unreported, at 3. R.C. 5107.07(A) effectively transfers the power of "parent" to DHS so that the agency can bring civil actions to sue for a money judgment for any support actually paid by the agency. Lamier v. Lamier
(1995), 105 Ohio App.3d 797, 801.
Contrary to the state's argument, the statutory language assigning Sandra's rights to the state neither gives the state additional rights when it provides assistance nor affects the trial court's equitable authority to order a setoff after it determines a parent's rights. The statute does nothing more than "assign" the rights of a parent who has a right to child support to the state. See Lamier, 105 Ohio App.3d at 801. This assignment is made as part of the mechanism the state may use to recover for state assistance paid for the children's support. SeeDonovan, 125 Ohio App.3d at 251. See, also, Abbe, 2000 WL 327233 at *3, Summit App. No. 19637, unreported.
A R.C. 5107.07(A) assignment means that the state has only the rights determined to belong to a parent who receives aid. The statute has no effect on the trial court's discretion. It logically follows that the trial court retains its discretion to determine the right to support, and to determine, in the exercise of equitable principles, whether either parent has the right to setoff against an arrearage. See Krause, 35 Ohio App.3d at 20.
Since Sandra began receiving state aid in December 1994, her rights to child support were assigned to the state under R.C.5107.07(A). However, the trial court's February 7, 1995 order offsetting Joseph's child support payments against Sandra's arrearage states that Sandra's right to child support payments does not begin until her arrearage has been met. This determination of Sandra's rights and setoff against her arrearage was a proper exercise of the trial court's equitable authority.
The trial court found, consistent with the February 7, 1995 order, that Joseph was under no duty to pay Sandra until her arrearage had been met. Since the state stands in Sandra's shoes, it has only the rights that Sandra had under the February 7, 1995 order and it therefore has no immediate right to payments. The trial court's determination that the state must wait until Sandra's arrearage is met to collect child support is correct. Appellants' assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] The state made no claim against Joseph under his common law duty or his statutory duty under R.C. 3103.03(A) to support the children.